```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF TEXAS
                   HOUSTON DIVISION
```

| | | |
|---|---|---|
| STACY L. CHRISTOPHER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 10-cv-4101 |
| | § | |
| HOUSTON COMMUNITY COLLEGE SYSTEM, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending in this Title VII discrimination case is Defendant Houston Community College System's Motion for Summary Judgment (Document No. 15) and Defendant's Objections to Plaintiff's Summary Judgment Evidence (Document No. 23). Based on the motion, response, reply, objections, and applicable law, the Court concludes as follows.

### I. Background

Stacy L. Christopher ("Christopher") filed this Title VII race discrimination case against Houston Community College System ("HCC") because it did not promote him from adjunct automotive instructor to full-time instructor, allegedly because of his race.[1] Christopher, who alleges that he is a black male, has been an adjunct automotive instructor at HCC since January 2003; in May

---

[1] Document No. 1 (Orig. Cmplt.).

2008, he applied for a promotion to full-time instructor.[2] Eleven persons applied for the position, all of whom were invited for interviews, and seven of whom were actually interviewed.[3] The initial interview consisted of an oral part, in which each candidate answered the same set of questions, and a hands-on part, in which each candidate performed the same two tasks.[4] Christopher failed to complete either of the hands-on tasks.[5] All of the candidates were given numerical scores by each member of the selection committee based on their performance in the interview, and the committee recommended the candidates with the top three average scores as the finalists for a further interview with Dean Kenneth Hernandez.[6] Christopher, who was not a finalist, had placed sixth out of seven candidates according to the numerical rankings.[7] Steven Waters ("Waters"), a Caucasian male and the interim automotive instructor, ranked second and thus went on to interview with Dean Hernandez, who recommended Waters for the

---

[2] Id. at 3-4.

[3] Document No. 15 at 3, 5.

[4] Id. at 5, ex. 1-D.

[5] Document No. 15 at 13; Document No. 15, ex. 2 at 68-69 (Christopher Depo.).

[6] Document No. 15 at 8.

[7] Id. at 7, 13, 20.

position.[8]  Christopher claims that he "was not selected for the promotion because of his race, and that Defendant intended to discriminate against Plaintiff because of his race."[9]

## II. Discussion

### A. Objections to Summary Judgment Evidence

Defendant objects to several statements made by Christopher in his affidavit filed in opposition to Defendant's summary judgment motion.[10]  The Court sustains Defendant's objections to the following statements:

(1) *Paragraph 15*: "After Mr. Waters was given the position of Interim Instructor for Automotive Technology, he told at least two of my co-workers, Mr. See and Mr. Nunn, that he was still working on achieving his Associates Degree.  In fact, Mr. Waters indicated to Mr. See and to Mr. Nunn, that he was actively taking classes at HCC while working as Interim Instructor, in order to complete his degree.  Therefore, based on HCC's stated minimum qualifications for the full-time position of Instructor for Automotive Technology, Mr. Waters was not qualified to hold the position of Interim Instructor."  Defendant's hearsay objection is **sustained**.

(2) *Paragraph 16*: "After Mr. Nunn and Mr. See informed me that Mr. Waters was still working toward his degree, I realized why this particular job posting had remained open longer than past requisitions for which I had previously applied.  HCC was keeping this posting open until such time as Mr. Waters could

---

[8] Id. at 8.  Christopher does not challenge the actions of Dean Hernandez, focusing entirely on the initial interview process.  Document No. 21 at 15.

[9] Document No. 1 at 5.

[10] Document No. 23.

    apply as a qualified applicant." Defendant's objections based on hearsay, that the statement is conclusory and speculative, and for lack of personal knowledge, are **sustained**.

(3) *Paragraph 26*: "Since Mr. Nunn and Mr. See had informed me that Mr. Waters did not even have his Associate's Degree at the time be [sic] became the Interim Instructor . . . ." Defendant's hearsay objection is **sustained**.

(4) *Paragraph 31*: "I have had multiple students come to me to demand that I help them get refunds for courses they have taken from Mr. Waters because my students felt that the class was a waste because Mr. Waters was not an effective teacher. These students also expressed frustration because though they had already complained, they felt that Mr. Clark was protecting Mr. Waters." Defendant's hearsay objection is **sustained**.

(5) *Paragraph 36*: "Rather, Mr. Bradbury, one of my coworkers, is a former student of mine and he let me know that Mr. Waters did not have my qualifications or experience." Defendant's hearsay objection is **sustained**.

(6) *Paragraph 37*: "I am clearly better qualified than Mr. Waters, the interview process was tainted, and HCC's argument that even had it not hired Mr. Waters, I would not have been in contention, is not true." Defendant's objections to this excerpt as conclusory and speculative are **sustained**.

Defendant's remaining objections are denied.

B. <u>Summary Judgment Standard</u>

    Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. <u>Morris v. Covan World Wide</u>

Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other

hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

C.  Title VII Framework

Title VII proscribes an employer from discharging or otherwise discriminating against any individual because of that individual's race. 42 U.S.C. § 2000e-2(a)(1). The Title VII inquiry is "whether the defendant intentionally discriminated against the plaintiff." Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004). Intentional discrimination can be established through either direct or circumstantial evidence. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001). Because Christopher presents no direct evidence of discrimination, his claims must be analyzed using the framework set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Id. Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing, by a preponderance of the evidence, a prima facie case of discrimination. Id. To establish a prima facie case of discriminatory failure to promote, Christopher must show that: (1) he is a member of a protected

6

class; (2) he sought and was qualified for an available position; (3) he was not selected for that position; and either (4a) the employer awarded the position to someone outside the protected class, or (4b) after the employer rejected the plaintiff, the employer continued to seek applicants with plaintiff's qualifications.  *See* Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 680-81 (5th Cir. 2001); LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 (5th Cir. 1996).

Once the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000).  The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'"  Id. (quoting St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2748 (1993)).  If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative).[11]  Rachid v.

---

[11] Because Christopher has not invoked a mixed-motive theory, his claim will be analyzed only for evidence of pretext.  *See* McCoy-Eddington v. Brazos County, No. H-05-0395, 2007 WL 1217989,

Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004). A plaintiff can establish pretext by either (1) showing that the "proffered explanation is false or 'unworthy of credence,' or (2) . . . that [plaintiff] is 'clearly better qualified' than the person selected for the position." Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 412 (5th Cir. 2007) (citations omitted).

D.  Analysis

HCC does not dispute that Christopher has established a prima facie case under this framework, but rather claims it had a legitimate, non-discriminatory reason for selecting Waters over Christopher, which Christopher cannot show was a pretext to discriminate against him based on his race.[12] HCC states that it hired Waters because it believed Waters was the best qualified candidate at the conclusion of the application and interview process.[13] HCC points to the numerical rankings in which

---

at *4 (S.D. Tex. Apr. 24, 2007) (confining analysis to pretext when plaintiff neither pled nor argued for mixed-motive); Johnson v. Saks Fifth Ave. Tex., L.P., Civ. A. No. H-05-1237, 2007 WL 781946, at *21 (S.D. Tex. Mar. 9, 2007) (Rosenthal, J.) (same); *see also* Nasti v. CIBA Specialty Chems. Corp., 492 F.3d 589, 595 (5th Cir. 2007) (concluding that the plaintiff waived consideration on appeal of a mixed-motive argument by failing "to present her mixed-motives claim to the district court in the first instance").

[12] Document No. 15 at 12-13.

[13] Id. at 13.

Christopher placed sixth out of seven candidates while Waters placed second, and to Christopher's admission that he was unable to complete the hands-on tasks during the interview.[14] HCC also provides affidavits from five members of the interviewing committee corroborating that Christopher's low score was based on his failure to complete the hands-on tasks; three members also cited his poor response to a question about speed density.[15] HCC's well articulated reason for its decision and its supporting evidence are sufficient to satisfy HCC's burden of production. *See* Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 881-82 (5th Cir. 2003) (defendant's statement "that it chose the 'best qualified candidates' . . . constitutes a legitimate, non-discriminatory justification for its failure to promote [plaintiff]").[16]

---

[14] Id. at 7, 13, 20.

[15] Document No. 15, exs. 1, 3-6.

[16] Simply showing numerical scores from interviews without any explanation as to how the interviewers decided them is not sufficient to satisfy a defendant's burden of production under the McDonnell Douglas framework. Alvarado v. Texas Rangers, 492 F.3d 605, 617 (5th Cir. 2007). However, numerical scores/rankings, coupled with an explanation, do satisfy this burden. *See, e.g.*, Joseph v. City of Dallas, 277 F. App'x 436, 441 (5th Cir. 2008) (defendant satisfied its burden by showing that plaintiff received low interview scores because he "provided poor answers to the hypothetical police scenarios and seemed unable to logically process information"); Hollaway v. Woodley, 203 F. App'x 563, 566 (5th Cir. 2006) (defendant satisfied its burden by showing that plaintiff scored lowest in numerical rankings because she was curt and blunt and did not appear to the interviewing committee to "make any effort to answer the questions"). To the extent that Christopher challenges the sufficiency of HCC's evidence in support of its reason, HCC has provided adequate support for the numerical

Christopher claims that HCC's reason was merely a pretext for discrimination on the basis of race. He attempts to demonstrate pretext by asserting that he is clearly more qualified than Waters and by challenging the impartiality of the interview process. The Court will consider each of these arguments in turn.

### 1. Clearly Better Qualified

"A showing that the unsuccessful employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected will be sufficient to prove that the employer's proffered reasons are pretextual." Moss v. BMC Software, Inc., 610 F.3d 917, 922-23 (5th Cir. 2010) (citing EEOC v. La. Office of Cmty. Servs., 47 F.3d 1438, 1444 (5th Cir. 1995) (internal quotation marks omitted). The standard for surviving summary judgment on a claim of being clearly better qualified is as follows:

> To show that he was "clearly better qualified" than [the comparator] and raise a fact question as to whether discrimination was a factor in [defendant's] hiring decisions, [plaintiff] must present evidence from which a jury could conclude that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." "[U]nless the qualifications are so widely disparate that no reasonable employer would have made the

---

rankings to satisfy its burden of production. Document No. 21 at 13.

> same decision," any "differences in qualifications are generally not probative evidence of discrimination[.]" Thus, "the bar is set high for this kind of evidence."

Id. at 923 (citations omitted). Stated another way, "[t]o survive summary judgment, the unfairness of the employer's decision must be so apparent as to jump off the record and 'slap [the court] in the face.'" Dailey v. Vought Aircraft Indus., Inc., 135 F. App'x 642, 645 (5th Cir. 2005) (quoting Odom v. Frank, 3 F.3d 839. 847 (5th Cir. 1993)). "Showing that two candidates are similarly qualified does not establish pretext under this standard." Price v. Fed. Exp. Corp., 283 F.3d 715, 723 (5th Cir. 2002).

Christopher argues that his extensive hands-on experience working on automobiles and large machines, his high school teaching experience, and his master's degree make him clearly more qualified than Waters, who held only an associate's degree, had experience teaching at a technical college, and who, according to Christopher, had worked primarily in the auto parts industry.[17] Christopher does not dispute that a master's degree was not required for the position.[18] Furthermore, he admits that Waters has a long history of experience both in the automotive industry and in teaching, arguing instead that his own experience is better than Waters's based on his own perception of the jobs held by the two

---

[17] Document No. 21 at 8-9.

[18] Id. at 8.

individuals.[19]  Christopher's subjective, conclusory belief that he himself is more qualified than Waters is not sufficient to meet the high bar set for surviving summary judgment on the basis of being clearly better qualified.  *See, e.g.,* Dailey, 135 F. App'x at 645 (evidence consisting of "his own assertions that he is better qualified" and deposition testimony of associates saying that plaintiff was qualified for the position are not sufficient to create a fact issue).

2.  The Interview Process

Christopher further claims that the impartiality of the interview process was compromised, thereby calling into question the scoring and ranking process.[20]  In support of this argument, he makes several assertions.  First, he claims that the chair of the automotive department, Carl Clark ("Clark"), exercises great control over the instructors in the department and therefore "has the ability to create screening committees that are staffed with his sycophants."[21]  Second, he states that members of the screening committee are told in advance the questions that will be asked in the interviews and the hands-on tasks that interviewees will be requested to perform, and that he "has learned that there have been

---

[19] Document No. 21 at 8-9.

[20] Document No. 15, ex. 7.

[21] Document No. 21 at 5.

12

occasions where members of a screening committee have informed candidates about the questions and tasks beforehand, in order to help out the candidates that are currently in favor."[22] Third, Christopher claims that the selection of interview questions can be designed to help certain candidates.[23] Finally, he alleges that one of the interviewers made disparaging comments while he was performing one of the hands-on tasks, comments that were designed to make Plaintiff "look and feel stupid in front of the committee."[24]

None of these assertions is supported by any summary judgment evidence beyond Christopher's own conclusory assertions. With regard to Christopher's allegations concerning Clark and his control of the interviewing committee, Christopher testified in his deposition that he had no recollection of whether Clark was even on

---

[22] Id. at 5-6.

[23] Id. at 6.

[24] Id. Christopher also asserts that the other two candidates interviewed by Dean Hernandez were not viable candidates and were "little more than 'filler' under these circumstances." Id. at 10. He bases this assertion on his apparent knowledge of one of the candidate's personal problems, which would make him unlikely to be selected "despite his impressive skill-set." Id. Christopher does not explain why the other candidate was mere 'filler,' noting just that he was a former student who apparently expressed surprise that Christopher was not selected for an interview with Dean Hernandez. Id. Christopher does not provide any evidence to challenge HCC's assertion that it selected the three finalists to interview with Dean Hernandez based on their scores in the initial interview. Christopher's conclusory statements and the anecdotal remark of a former student provide no support for Christopher's claim that HCC discriminated against him because of his race.

13

the committee that interviewed him;[25] and when asked, "[d]o you know whether Carl Clark exercised any kind of influence of any kind on any of the interview committee members to make them score or rank candidates in any particular way?," he responded that he did not.[26] Christopher asserts in his affidavit that Clark "show[ed] preferential treatment of my white coworkers," but reports no example, incident, or specific instance to support this conclusory accusation of discrimination.[27] Furthermore, Christopher offers no evidence that any committee member told any of the interviewees in advance the questions that would be asked during the interview, and he likewise does not explain how the questions in any way discriminated against candidates based on their race.[28] Finally, Christopher charges that committee member Michael Cleveland made the following remarks while Christopher was trying to do one of the hands-on tasks: "Don't take that bulb out there," "You don't have to do that," and "Hurry up, Stacy."[29] Christopher offers no

---

[25] Document No. 15 at 9, 11; Document No. 15, ex. 2. at 52-53.

[26] Document No. 15 at 11; Document No. 15, ex. 2 at 66.

[27] Document No. 21, ex. 1 at 3-4.

[28] Christopher argues that he was unable to perform one of the hands-on tasks, measuring a lawnmower crankshaft, because it was not a legitimate task for an automotive instructor. Document No. 21 at 6. He connects this claim to his argument that the questions were discriminatory but does not claim that this question discriminates on the basis of race. Id.

[29] Id. at 7.

evidence, however, that comparable or similar remarks were not made to other applicants who encountered difficulty or delay in performing the hands-on tasks. Regardless, none of these statements attributed to one committee member relates to Christopher's race, nor does any of them give rise to an inference that Christopher was discriminated against on the basis of his race. *See* Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 380 (5th Cir. 2010) (finding that comments are evidence of discrimination only if they are, among other things, "related to the protected class of persons of which the plaintiff is a member"; and "comments that do not meet [this] criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment").

In sum, Christopher has wholly failed to satisfy his burden at least to raise a genuine issue of material fact that HCC's proferred reason for its employment decision was a pretext for race discrimination. *See* Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429-30 (5th Cir. 1996) (en banc) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden. . . . It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary

judgment motion, in the face of proof showing an adequate non-discriminatory reason."). It is therefore

ORDERED that Defendant Houston Community College System's Motion for Summary Judgment (Document No. 15) is GRANTED, and Plaintiff Stacy Christopher's claim is DISMISSED WITH PREJUDICE.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 9th day of February, 2012.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE